IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CARLY WELKIN,
    Plaintiff pro se,

v.

META PLATFORMS, INC.,
    Defendant.

CIVIL ACTION FILE NO.
1:26-cv-00148-ELR

NOTICE OF FILING ORIGINAL
EVIDENCE (AUDIO TRANSCRIPT)

## NOTICE OF FILING ORIGINAL EVIDENCE

COMES NOW Plaintiff Carly Welkin, appearing *pro se*, and respectfully files this Notice to place into the Court record new and material evidence obtained on January 14, 2026.

Attached hereto as **Exhibit A** is a true and correct transcript of an audio recording received from the hostage victim, Masoumeh Mohajer, on January 14, 2026. This evidence was obtained subsequent to the filing of Plaintiff's initial Complaint and Emergency Motion.

In this recording, the victim confirms her identity, confirms that the Facebook profile at issue (displaying the title "Director") is unauthorized and false, and explicitly states that the continued existence of this profile is endangering her life and sabotaging her pending appeal in Iran.

Plaintiff files this transcript to preserve the record and to support any future motions or requests for relief that may be deemed necessary to prevent irreparable injury.

Page 1 of 6

# NOTICE OF CONTINUING HARM AND BAD FAITH CONDUCT

Plaintiff further files this Notice to place on the record her profound outrage and objection to the Defendant's continued refusal to act. As of this morning, January 15, 2026, Defendant Meta Platforms, Inc. has still failed to delete the imposter account located at `https://www.facebook.com/masoumeh.mohajer.5`, despite actual notice of this lawsuit, the Emergency Motion filed on January 12, 2026, and the direct plea of the hostage victim. Plaintiff has verified that the profile remains active and accessible as of the time of this filing.

Defendant's conduct in leaving this life-endangering content online while litigation proceeds stands in stark contrast to the behavior of other service providers in similar legal precedents.

## Comparison with *Zeran v. America Online, Inc.*

Plaintiff specifically distinguishes the instant case from *Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997). In *Zeran*, the service provider (AOL) did not wait for a lawsuit to remove false accusations. As the Fourth Circuit noted, AOL "removed the specific posts months before the lawsuit even began." The timeline in *Zeran* confirms that when the lawsuit was filed in April 1996, the defamatory posts had already been removed nearly a year prior (May 1995). The plaintiff in *Zeran* was not suing to force removal of active content, but rather to seek damages for past negligence.

## Comparison with *Carafano v. Metrosplash.com, Inc.*

Defendant's inaction is further highlighted by the contrasting responsible conduct seen in *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003). In that case, involving a fake dating profile of an actress, the service provider (Matchmaker.com) acted with immediate dispatch upon receiving notice:

- **November 6, 1999:** The plaintiff's assistant contacted the company to demand removal.

- **November 8, 1999 (Monday Morning):** The company blocked the profile from public view.

- **November 9, 1999:** The profile was permanently purged from the servers.

In *Carafano*, the lawsuit was filed *after* the profile had already been removed. While the court ultimately ruled on immunity grounds regarding the content creation, the provider's conduct demonstrated a recognition of the immediate harm.

## Comparison with *Green v. America Online, Inc.*

Similarly, in *Green v. America Online, Inc.*, 318 F.3d 465 (3d Cir. 2003), while the court ultimately found the provider immune from tort liability, the record reflected that AOL had actively monitored and addressed the harmful conduct. The consistent thread in *Zeran*, *Carafano*, and *Green* is that service providers, even when asserting legal immunity, typically act to mitigate harm upon notice. Defendant Meta's refusal

to do so here marks a significant and dangerous departure from this industry standard.

## Comparison with *Barnes v. Yahoo!, Inc.*

Finally, Plaintiff directs the Court's attention to *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009). In that case, involving unauthorized profiles posted by an ex-boyfriend, the Ninth Circuit noted that while the plaintiff struggled to get a response initially, once she filed her lawsuit in state court, **"[s]hortly thereafter, the profiles disappeared from Yahoo's website, apparently never to return."** *Id.* at 5316.

Furthermore, *Barnes* established that a service provider is not immune under Section 230 when it makes a specific promise to remove content and fails to do so. In the instant case, Defendant sent Plaintiff an email on January 8, 2026, stating: "We removed the content you've reported... We understand this action to resolve your intellectual property issue." Yet, the dangerous profile remains active. Defendant's conduct is thus more egregious than that in *Barnes*: Defendant has not only failed to remove the content "shortly thereafter" the lawsuit was filed, but it has also engaged in "false compliance" by claiming the issue was resolved while knowingly leaving the lethal content online.

## Conclusion regarding Defendant's Conduct

Here, the dangerous content is **not gone**. It remains active and accessible worldwide, directly contradicting the timeline and good faith efforts seen in *Zeran*, *Carafano*, *Green*, and *Barnes*. By maintaining this profile after being served with a federal lawsuit alleging it is the cause

of an American citizen's torture, Defendant is thumbing its nose at this Court, at Plaintiff Carly Welkin, and at the hostage victim, Masoumeh Mohajer. This is not passive neutrality; it is active participation in the ongoing harm. Unlike the providers in the cited cases, Defendant here has chosen to leave the "lethal metadata" active during the pendency of this litigation, knowingly perpetuating the risk of execution or life imprisonment for the victim.

## NOTICE OF PERFECTED SERVICE AND PUBLIC VISIBILITY

Plaintiff further informs the Court that Defendant cannot feign ignorance of these proceedings. Service of Process was perfected on January 12, 2026, at 2:43 P.M., when the Summons and Complaint were personally delivered to Defendant's Registered Agent, Corporation Service Company (CSC), as evidenced by the Proof of Service filed at Docket Entry 9.

Plaintiff further confirmed the validity of this service address (2 Sun Court, Suite 400, Peachtree Corners, GA 30092) through the Georgia Secretary of State's business search website (https://ecorp.sos.ga.gov/businesssearch), ensuring that notice was delivered to the legally designated recipient for service of process.

Moreover, as a sophisticated litigant, Defendant utilizes automated docket monitoring systems. This case, its filings, and its emergency nature are publicly visible on the Court's own CM/ECF system (https://ecf.gand.uscourts.gov), as well as on industry-standard legal tracking

platforms including:

- PacerMonitor: `https://www.pacermonitor.com/public/case/62435808/Welkin_v_Meta_Platforms,_Inc`

- Justia Dockets: `https://dockets.justia.com/docket/georgia/gandce/1:2026cv00148/354046`

- CourtListener: `https://www.courtlistener.com/docket/72129756/welkin-v-meta-platforms-inc/`

- Law.com Radar: `https://www.law.com/radar/card/pm-62435808-welkin-v-meta-platforms-inc`

Defendant's legal team has access to these systems. Their failure to act in the face of both actual service and widespread public notice of a life-threatening emergency confirms that their inaction is willful.

Respectfully submitted this 15th day of January, 2026.

**Carly Welkin**
Plaintiff, *Pro Se*
3385 Hollow Tree Dr
Decatur, GA 30034
(470) 461-9151
karly784@gmail.com

Page 6 of 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CARLY WELKIN,<br>     Plaintiff pro se, | **CIVIL ACTION FILE NO.**<br>1:26-cv-00148-ELR |
| v.<br><br>META PLATFORMS, INC.,<br>     Defendant. | **EXHIBIT: TRANSCRIPT OF AUDIO EVIDENCE** |

**TRANSCRIPTION OF AUDIO EVIDENCE**

**File Name:** Masoumeh Mohajer saying Facebook director account must be deleted on 01-14-2026.m4a

**Date of Recording:** January 14, 2026

**Speakers:** Carly Welkin (Plaintiff), Masoumeh Mohajer (Victim/Account Holder)

---

**[00:00] Carly Welkin:** Please, um, Mom, please start.

**[00:04] Masoumeh Mohajer:** Hi, my name is Masoumeh Mohajer. I born [REDACTED], 1955. My last four digit of my social security number is [REDACTED]. As of today, January 14, 2026, I am present in Iran. I have been out from jail because of bail... so there is somebody property, it's on bail, I am out.

**[00:46] Masoumeh Mohajer:** I am just about to appeal the case, which has been sentenced [to] 25 years... uh, 12 years *of* 25 years severe punishment I should serve in jail. I am more than 70 years old, and I have pituitary adenoma in my brain. And plus that, the case, it's going to be appeal pretty soon.

1

**[01:29] Masoumeh Mohajer:** So my daughter, Carly Welkin—her date of birth is [REDACTED], 1984—and she attempt to get erase the Facebook page which I was not open up myself from United States. And it has stated that I am Director of the Channel 2, which I am not. And I've been sentenced for those Director [claims].

**[02:09] Masoumeh Mohajer:** And my daughter attempt to ask Facebook many time to shut down this page because this page is consequencing my lifetime, actually. And Facebook resisted to shut down and bring it down this Facebook page. This page is not associated with my phone number [REDACTED]-6122 and is not associated with my email address [REDACTED]@yahoo.com...

**[02:55] Masoumeh Mohajer:** Someone else open up that page and we are not able to bring it down. And several time my daughter, Carly Welkin, ask Facebook with email, with many way, to have this page shut down because it's gonna cost my life. And they resisted to take it down. However, I would like to address this issue. This issue caused me to get lifetime jail in Iran. Which is, I am not safe. My life is not safe in Iranian jail.

**[03:49] Masoumeh Mohajer:** I am... I born in Iran, in Tehran, so I am Iranian. And then after I came to U.S. and my asylum has been granted by U.S. government... I was there. I am U.S. citizen. I have right... I have right to ask Facebook: this page was not open by me, Masoumeh Mohajer. This page—I don't know whoever open up, doesn't matter who open up—has to be...

**[04:31] Carly Welkin:** It has to be taken down. It's...

**[04:34] Masoumeh Mohajer:** Has to be taken down.

**[04:35] Carly Welkin:** So, do you... do you agree that this page is

2

hurting you in the appeal process? Is making it difficult?

**[04:43] Masoumeh Mohajer:** Oh, 100 percent.

**[04:45] Carly Welkin:** Okay. So the other thing... the other thing that I told the judge is I don't know who created this page, this Facebook Masoumeh Mohajer page on Facebook that's saying you're the Director of Channel 2 and Iranian opposition. It doesn't matter. We just need to delete this page. Facebook needs to delete this page. It's unauthorized, it's unlicensed, it's against your [our] copyright, the images that are there. Facebook needs to take it down. It doesn't matter who created... Facebook needs to take this down. Is... do you agree?

**[05:15] Masoumeh Mohajer:** That is... That is right. As soon as possible. I mean, in a few more days, that's the deadline that we gonna... we gonna do the appeal... we gonna file the appeal. If this page is not immediately getting down, it's gonna cost my life.

**[05:40] Carly Welkin:** Yes. I said to the judge that you have brain tumor and you don't have much longer to live. This page needs to be taken down. Um, you didn't do this. This wasn't you. This is a... it's making... it's resulted in you receiving more than the maximum sentence based on the Iranian guidelines... sentencing guidelines, based on what they were claiming. Now it's making it... it's hurting your chance and it's sabotaging the appeal process. So, um, thank you very much. I appreciate it. I love you, Mom. So, let me um, stop this recording.

**[06:17] Masoumeh Mohajer:** Thank you. I love you too.

---

*End of Transcript*

3